Can you call the next case please? 3-11-0264 consolidated with 3-11-0932 James Hanley, appellant, cross-appellate by Mark Walton versus Margaret Hanley, appellate, cross-appellant, J. Reid, cross-court Mr. Walton Good morning. May it please the court and counsel, my name is Mark Walton here on behalf of the petitioner and appellant, I guess he's also cross-appellant, James Hanley I'm joined this morning by my partner Bill Kohlhase at the counsel table and also my client Jim Hanley is in the back of the courtroom Not to retrod ground that we've already been through, but we were up here on appeal in January arguing the first appeal in this case, which was from the dismissal of a petition to appoint a guardian Jim Hanley, my client, filed a petition seeking the appointment of a guardian for his father, John P. Hanley who we've referred to in the briefs as Jack, which is what name he's known as So, with the first appeal, we addressed dismissal of the guardianship petition and also the second count of the petition, which sought an order of protection based on the Domestic Violence Act alleging that the disabled adult had been exploited by the respondent, Margaret Hanley So, we're here today to deal with Rule 137 sanctions that were entered after the petition was dismissed The question that the court's confronted with, does Rule 137 permit a trial court to impose sanctions in the absence of any finding that there were any false allegations in the petition and in the absence of any finding that the petition was filed for an improper purpose and then also in the absence of any finding that the pleading was filed without making any reasonable inquiry None of those findings were made in this case Let's first start with the actual allegations in the motion for sanctions While we've attached it to the brief and we argue that it's vague, it's pretty clear that the motion is based solely on the argument that the petition was filed for an improper purpose That the alleged improper purpose that Margaret Hanley cites in the motion is that she claims the Hanley brothers without being specific as to which Hanley brother, had harassed her, were upset by the fact that her father had made her president of the company at issue, which is A. Lucas and the only specific thing that she alleges against Jim Hanley, the petitioner, is that he was operating under a quote-unquote undisclosed conflict of interest by virtue of the fact that he worked for Hanley Steel, a competitor of A. Lucas Now that theory just doesn't work in a case like this where the companies aren't involved, the businesses aren't involved But what's more important and defeats that theory for sanctions is that Jim didn't ask to be appointed guardian of the estate of his father So any interest that he may have by being an employee of Hanley Steel and competing or acquiring secrets or something from A. Lucas who his father is still not stocking, he would have no access to that information He sought to have a bank, Commerce Bank in Peoria, appoint a guardian So that theory fails and the court didn't accept it anyway What the court did at the first hearing on the motion for sanctions, which was July 11, 2011 Or actually it was issued on July 19, the court found that Margaret had made out a prima facie case or claim for sanctions based on Jim's failure to make a reasonable inquiry Well, this was something that was not even included in Margaret's motion And the court set the motion for sanctions for an evidentiary hearing ostensibly to delve into the issue of whether Jim Hanley had made a reasonable inquiry before filing the petition So we've got a motion that makes no mention of failure to make a reasonable inquiry or any false allegation in the petition And then we've got a court order setting it for hearing saying that the hearing is going to be to resolve the question of whether a reasonable inquiry was made So needless to say, we're operating under a little confusion at that point as to what we're going to be getting into at the hearing And this problem, as I'm going to get to a little later, was compounded by the fact that the court having found that Margaret made a prima facie case, straddled Jim with the burden of moving forward with the evidence first So confusion as to what the real issue is And then he doesn't have the benefit of hearing evidence that Margaret presents first He has to go first and try to unravel what the issues are So I'm going to jump forward a little bit and get to what the court actually I have a question. In other words, what you're saying is her motion for sanctions did not have a prima facie case for a reasonable inquiry She didn't even argue that there wasn't a reasonable inquiry made She argued only that the petition was filed for an improper purpose, this competition, harassment allegations Not that there wasn't a prior investigation of the facts or even that there was anything in the petition that wasn't true Just that it was filed for some improper motivation So then the judge ruled, not that she made a prima facie case based upon what was alleged in the motion, but for the entirely different grounds that there wasn't a reasonable inquiry If you look at the petition, you're saying it's clear she's only arguing improper motivation And the judge's ruling is you didn't make a diligent inquiry Correct. Different issue So we'll get into some of the evidence that was presented, but at the end of the day the court ruled not that the petition was filed for some improper purpose, which is what Margaret alleged Nor that there was a failure to make a reasonable inquiry, which is why the court scheduled the matter for an evidentiary hearing But for completely different reasons that were never articulated at any stage Which is, save for the motion to dismiss, that Jim shouldn't have filed the petition in the first place Because the Domestic Violence Act provides that you can't initiate or continue a petition over the objection of a disabled adult And that he should have withdrawn the petition when his father, after it was filed, filed an affidavit objecting to the proceedings So this is completely new, no evidence was presented on the issue because we didn't know it was an issue At least at the motion for sanctions stage So we've got a motion that says one thing, a ruling setting the motion for hearing that says we're setting the hearing for another issue And then an ultimate ruling that eschews both of the first two things and rules on completely separate grounds So just that procedure in itself is unfair and prejudicial to Mr. Hanley And the motion for sanctions, the order for sanctions ought to be reversed just on that basis But getting into the merits of what the court ruled First, the judge ruled that Jim had failed to obtain consent or file the petition without first asking his father Do you want these proceedings filed? This is count two, by the way, of the petition, not the guardianship proceeding, but the proceeding for the order of protection That he filed it without first asking or getting consent of his father And then failed to dismiss or withdraw the petition when his father filed the objection Well, that first prong, wouldn't that be related to the reasonable inquiry? Now whether that was an appropriate avenue to go down is another matter, but at least... I can see how you could, yes, I mean, that does relate to what Jim did before filing the petition. The problem is when you look at the statute, it doesn't require consent. The statute, this is the Domestic Violence Act, and it is a statutory claim, says that the petition can't be initiated or continued over the objection of the alleged disabled adult. So there's no dispute that he had never objected to the proceeding before it was filed. So it wasn't initiated over his objection. Nobody claims that it was. But it was continued over his objection, wasn't it? It was continued, and I need to be specific with how it was continued. The affidavit was filed in conjunction with the motion to dismiss. And the exception to initiating or continuing over the objection of the disabled adult is if the proceedings are consented to by the guardian. Well, we had a petition seeking the appointment of a guardian. That was count one. So what we opted to do, what our client opted to do, is go to hearing on the motions to dismiss. If count one was not dismissed, then we have a hearing to see if Mr. Hanley is going to be appointed, or some other party is going to be appointed guardian. At that point, it's completely within the hands of the guardian to decide whether to pursue count two. So rather than withdrawing count two, waiting to see what happens with count one, and then refiling count two, we just proceeded. And really understand, all we did was respond to the motion to dismiss without withdrawing. The count. This is the action under the Domestic Violence Act. Mr. Walton, how would anybody be able to object to the initiation of the petition if they weren't told about it? Well, I can certainly see a situation where the party that's planning to file it would ask, would communicate with the alleged disabled adult, let them know that this is what they were planning. In the normal course of events, wouldn't you do that? I think that certainly there are family situations where that would be normal. In this situation, as we argued extensively at the first oral argument, we had a situation that nobody disputes it, that there was a stranger. And what my client saw over the years leading up to his filing of the petition were several disturbing developments with respect to his father. Traumatic brain injury in 2005, followed by multiple people telling him, and this is all in the testimony in the record now at the motion for sanctions, multiple people telling Jim Hanley that Jack didn't recognize them. Or didn't acknowledge them because he was estranged from them. Perhaps his sons, but what about one of the key pieces of evidence here is that he didn't even go to his brother's funeral in 2009. There's no evidence that he was estranged from his brother, Bob. And these are all purely residents, these are all local residents, it wasn't like it was a funeral in California. He failed to attend his brother's funeral, and there was no logical explanation for that, at least in the mind of my client. So he sees this disturbing trend, and as I've outlined in the brief, can't get into all of the facts here because time doesn't permit, these incidents started to escalate after Jack's wife, Jim's mother, died in 2009. So he sees this disturbing trend and decided at some point that he needed to step in, that that was the right thing to do. Estrangement or no estrangement, you know, strained relationship or no strained relationship, it was still his father and he was concerned. Well, I, you know, I see what you're saying, that there is a point at which there's an objection filed, right, but you're saying this was all put into one hearing. Sure, and so if it were a separate hearing and he proceeded over the objection of the person, then you think that's a clearer case. Certainly a clearer case. Even though there was no prior consultation, but you proceeded because you would get notice by initiating notice through the court. Right. So your argument is because it's all like in the one consolidated motion to dismiss, etc., appointment of guardian, that there was no real choice in terms of withdrawing the petition, right? Well, I suppose you can always withdraw, but again, what's important to understand is that the claim seeking to appoint the guardian was still pending. And understand, I mean, you know, we're talking about elder abuse here, and the Domestic Violence Act is intended to address elder abuse. When you have a situation where you truly believe that a disabled adult is being exploited by a child or a caretaker or some other person, do you automatically withdraw the petition just because they were able to prevail upon? I mean, if exploitation is the issue, then the mere fact that they were able to convince the person to sign an objection shouldn't, I mean, just as a matter of policy, should not be something that requires, and the statute doesn't mandate, that you withdraw the petition at that stage. Okay? So in the, and more on this point, you know, something that's, I think, very important for the court to consider is there's no case law, you know, we are dealing with 137 and sanctions. There is no case that interprets the Domestic Violence Act in such a way that you are mandated to withdraw the petition in the face of an objection, that you can't contest an objection. We were in uncharted ground. So the real question that the court ought to ask itself then is, was there at least some minimal good faith basis for maintaining count two, at least through the motion to dismiss stage? And I don't think there's any argument that there was at least, because there's no contrary case law. We weren't faced with a case that said, if you get an objection filed, you must withdraw. There was no law like that. So we didn't violate any existing precedent. And again, it's a question of, do you dismiss it, only to refile it when the guardian is appointed, or do you just argue out the motion to dismiss? And that we chose to argue out the motion to dismiss. Maybe the filing, you know, the court rules that the filing of the objection is sufficient grounds to dismiss count two, but to sanction the mere filing of count two and then the maintaining of it, and that doesn't even get us, you know, that's a good segue into the case law on what is required, because keep in mind, 137 deals with pleadings. The pleading was filed at such a time when there was no objection. These are events that happened after the pleading was filed, and that raises a whole different set of questions beyond 137. What does an attorney do when you file a petition that's valid, factually, you know, the allegations are true, and then something happens after you file it that calls it into question? There's a Walsh case that's been cited, and we've put it in our reply brief, that says, when there's a factual allegation in your pleading that you as an attorney say, subsequently learned is false, then your obligation is not, you don't have to withdraw the motion or the pleading, the complaint, whatever it is in that case. What you do have to do is refrain from advancing that false allegation by incorporating it into subsequent pleadings, and certainly as a matter of professional responsibility, alert the court. Thank you. Mr. Rossler. May it please the court, Madam Clerk, counsel, I plan to take half of my allotted time, and I've got three pieces of paper that I brought with me to the podium here today. The first is the petition for appointment of guardian and order of protection. It's just a little bit older than that. It's over four pages long. Less than two of those pages recite the basis for the order of protection sought against James's sister, Margaret. James Hamblin makes essentially two points. Number one, my father is disabled, and I can represent his interests. And number two, my sister, Margaret, is controlling my father, misappropriating the assets of the family business I've built over the course of a lifetime, and making decisions inconsistent with those my father would have made had he been of sound mind. The second piece of paper is the pivot point around which James cannot hide. On August 1st of 2008, 15 years after his five sons left the family business to establish themselves as a cross-town competitor, James and his brother sought a meeting with their father. They had not spoken to since their leaving. In that span of 15 years, sister Margaret had been placed in charge of the family business, whose success the five brothers opposed. Their father's response to the request that he meet with James and his brothers could not be more clear. I do not wish to communicate with you at this time. Your lack of integrity and dishonesty have been too large a part of my life. I have moved on and would ask you to try and do the same. If my feelings should change, I will contact you. James' father did not contact James again. The 15 years of not speaking, of not so much as standing in the presence of one another, spanned another three years before James, in his audacity, filed this claim against his sister Margaret and the father. The claims made by James, the cross-town competitor of this father's business, are spectacular. Father, I have not spoken to you in 18 years. I have not so much as stood in your presence, but I know you are too old and infirm to know what you are doing. Judge Brandt dismissed that claim and found just enough anecdotal evidence to shield James from sanctions for filing it. Not so with James' claims against his sister Margaret. Based on nothing more than sheer speculation and conjecture, James makes the claim that Margaret controlled their father, interfered with a family business that James was actively competing against. And as a threshold interest, in order to make these claims against Margaret, James must first demonstrate that the father, assuming he is disabled, had not objected to the claims made on his behalf against Margaret. At every stage of this lawsuit, Margaret and her father raised the point that James had been dismissed as a person lacking in integrity and as a dishonest person. With a father who had refused to speak and stand in the presence of James for 18 years, how could James not see that his father objected to the claims made on his behalf? James' argument was that Margaret was assuming the role of a personal protector of his personal interests. Margaret made this argument that James had no standing to bring this lawsuit against her at the beginning of the lawsuit, at the middle of the lawsuit, at the end of the lawsuit. My recollection is that it was made at the July 11, 2011 hearing that you don't have transcript of. And to make clear that Margaret stood on that argument, that James had no standing to bring the lawsuit in the first place, I offer the third piece of paper that I brought to the podium here today. Filed on September 1, about six weeks after that July 11 hearing, I have the motion that was filed on behalf of Margaret to quash the notice that she appear at the evidentiary hearing on her motion for sanctions. The motion to quash Margaret's appearance made clear that beyond her claim that James filed his lawsuit for improper purposes, Margaret had not abandoned the corollary to that claim, which is that an improperly motivated lawsuit is by definition a meritless one. James cannot claim to be surprised. Judge Brandt's July 19 order made clear that James would be called upon to demonstrate that he had made a reasonable inquiry, that the petition for an order of protection against Margaret was well-grounded in fact. And while Judge Brandt framed the issue as he did, something that James well understood, I did let Judge Brandt and James know that Margaret had not abandoned her claim, that James had not abandoned his claim. Judge Brandt did not feel necessary to reach that issue. It was clear to him, regardless of James' motives, that James had no reasonable basis for filing a claim on behalf of the father against his sister Margaret. And James was not caught unawares. He came to the evidentiary hearing on sanctions fully prepared, with something in the neighborhood of 20 witnesses subpoenaed or noticed to appear. And though falling completely short of the mark, James offered what evidence he could that Margaret controlled their father and made decisions against his interests. James spoke to this August 2008 letter he got from his father, and when asked, What made you think in 2008 that your father wanted to talk with you and he wanted you involved in his life? And James answered, I did not think he wanted to talk with me. John P. Hamlin, the father, the father's attitude toward his son did not change in the three years that followed. And in the end, James did not offer anything beyond a speculative explanation for why he filed suit against Margaret on their father's behalf. Clearly, their father had no interest in having James represent him in any capacity whatsoever. Not one piece of competent evidence was offered to suggest that Margaret had done anything but strive for success in a family business against which James was competing. And when called upon to defend herself against claims of corporate mismanagement, it should come as no surprise that a family business would, as is customarily the case for corporations of all stripes, pay the defense costs of one of its managers on the condition that the fees be repaid if recovered. This is hardly something that would save James from sanctions for his conduct in a case such as this. Any questions that I can answer? What precisely was the basis for the sanctions? At the end of the day, what was the basis for the sanctions? Judge Brandt got it right. He went to the very heart of the matter and he says, you know, when a father sends a letter like this to his son and says, you're dishonest, you lack integrity, I haven't talked with you in 15 years, I don't want to talk to you now, don't try to contact me, quite apart from having to go to someone to ask consent before you know whether they object, this is that objection. This is an objection that says, I don't want you to carry my groceries, I don't want you to unlock my car, I don't want you to be anywhere near my home, and I certainly don't want you to file a claim on my behalf against one of your sisters. And that was the basis of Judge Brandt's ruling. Now, he also says, beyond that, there's not one iota of evidence that there's harassment, that there is manipulation, that there is abuse, but at the heart, the threshold issue is what I want to focus on. Okay, and that's from, so, but if somebody who doesn't have contact has something that might lead them to believe that this letter and other actions were the subject or the end result of undue influence by somebody else's, then does that make it, in other words, even though the letter is not ambiguous, if there's, is it reasonable to believe that perhaps the letter itself was the product of this undue influence of which they complained? Had there been one bit of evidence that that was the case, but I believe all of the anecdotal evidence that you hear is evidence that comes after the date of this letter. There is no suggestion anyplace that someone took his hand and wrote this letter, influenced him to write this letter. In fact, there's every reason to look at this letter and to assign it the credibility it should have in the eyes of the court, given the history that occurred with John Sons, who leave in 1992 and set up a cross-town competitor and are working actively against the success of his business over the course of those 15 years. There's everything to suggest that we should see credibility in this letter. I suppose, yes, I can see a case where someone comes up and says, this is a forgery at worst. Is that related maybe psychologically? Older people? Not one shred of evidence. Theoretically, yes, I believe that that would make this case different. Well, what about the not attending his brother's funeral? You know, I mean, are there a million innocent explanations for that? I had the flu that day. I didn't want to see my sons who I knew there are, to be sure, a number of things that are raised in the record that they assign sinister purposes to that have a myriad of innocent explanations. And I don't think that on its face that that is something that leads to the right to file a lawsuit. That letter is dated how far in advance of the filing of the suit? Three years. Did either of the things that are alleged to be the basis for the belief that John P. was disabled, falling and hitting his head and losing his wife, those things all happened after the letter? I believe that as you heard Mr. Walton address this, that the injury that he suffered, I think, was in 2005. Okay. So, if I understand correctly, your position is that the actual filing of this petition was sanctionable? Yes. And I base that on unique factual circumstances here. On 18 years of not speaking to a son? Your position, I assume, would not change if there were no letter there? I mean, that you would argue that there are 18 years of competition, etc., etc., etc. I would take that position. I have the luxury of a much different position to advance here. So you're saying pretty much that this is a fact-specific notice at the time of filing? I can't imagine how you could look at this as anything other than an objection. In the face of a document like this, and you pile on that 18 years of absence and not speaking with one another, absolutely you would have to inquire. You would have to determine whether this is the current state of affairs and all indications would suggest that it is before you would file a claim in your father's shoes against his daughter. Let's go a little further into the lawsuit at the time that there's actually a filing of a formal objection after the suit has been filed. The act of proceeding to hearing as opposed to withdrawal is that something that the trial court was considering in their ruling on sanction? The judge grant gives no indication that he considered that. Let me conclude with these remarks. Thank you. You may all be familiar with the famous quote that is attributed to the 18th century quote, but twice, once when I lost a lawsuit and once when I won one. This is one of the law's hardest lessons and one nearly impossible to explain to a client before they experience it themselves. Rarely does a judge step into the breach to provide any measure of recovery to a party who has paid the price for defeating claims that never should have been filed in the first place. I'm proud of the message that it sends to Margaret and her father. I will be prouder still of the favorable decision that I'm hoping to receive from this court. Thank you very much. Let me answer one other question I meant to ask earlier and apologize. If in fact this objection is the grand trump card, then at that stage of the game, once the objection is filed, does the court just have authority to say game over? In other words, you can't proceed because there's an objection, game over. If in fact, just the fact that there's an objection filed puts an end to it without any inquiry into the genesis and the validity of the objection itself. In other words, if it's so egregious, it's like an affirmative defense in a lawsuit. The person who files an affirmative defense that they're ultimately successful on doesn't necessarily, but we don't always sanction the person that brought the claim. But in this, and this is even more different, this objection seems to be the argument. The fact of the objection should have ended it all. There's an objection and you shouldn't do it. There's an objection. I do think that the court has that power. I'm a little confused. I thought that the only sanctions were with regard to Margaret's complaint and not the father's. The motion for sanctions filed by the father was dismissed. I will point out that the statute is what it is and it says it does not give them the right to second guess whether the objection was made, was meaningful, whether it was well informed. It says if the disabled adult objects, it contemplates that the adult may in fact be impaired but if you read the statute it says if the disabled adult objects, that's the end. But that's a different thing from saying that you've got to go get the disabled adult's consent before you file it. I do and I think that under the circumstances of this case, given this kind of communication, 18 years of not seeing or standing in the presence under these circumstances, you can't wait for someone to walk in with the objection. You have the objection right here in your hand. Thank you. First I want to correct a couple of factual misperceptions. One, the Hanley brothers said that competition, business competition is legitimately an issue. I don't think it is an issue unless you're going to revisit and affirm on other grounds which I don't think is proper under 137. It does seem a little strange that a business competitor is trying to say the guy that's running my business is mismanaging it. If that were the only allegation, that is a little strange. That's not the allegation. The allegation is that the daughter is exploiting the father. And this is, after all, the son bringing the suit, seeking appointment of a guardian for his father and alleging exploitation by his sister. The one fact I want to correct the misperception, the Hanley brothers did not all five defect from A. Lucas at the same time in some sort of a corporate split up. This was over a long period of time and the evidence bears that out and you can see in the record and I've cited things in the brief. More important, the letter in 2008 that Jack wrote to his sons and what did he say about his son Jim? He said, well, this notion of dishonesty and lack of integrity, I didn't have any reason to include Jim in that. That was the other boys. Well, what does that tell us? That tells us that Jim had a very legitimate basis to question that letter. He wrote this letter from his dad that includes allegations against him that he knows aren't true and that he knows his dad would know are not true. Would you not question that letter? He did. And the testimony from Jack himself bears out that he had good reason to question it. Moving on, the objection, again, filed after the pleading was filed, simply cannot give rise to any basis for 137 sanctions. According to the rule, it's a penalty for signing a pleading that's not well grounded in fact or warranted by law. And the case law says there has to be a false allegation. If the statute said it's a condition preceding that you obtain consent and the petition has to include an allegation that you have consent, it might be a different story, but that's not the case. If the petition said we conferred with Jack Hanley and Jack Hanley provided consent and that were a false allegation, then you're in the realm of 137. That is a false allegation. That's signed in the pleading. Or if the statute required prior consent, it doesn't. It says that the action can't be maintained over the objection and that this letter can be construed as an objection under a statute that it makes no reference to. I want to get back to Justice Smith's question, over the objection. And if there is a filing of objection, his analogy is to a trump card, game over. Grounds for dismissal, absolutely. Grounds for dismissal, but not grounds for sanctions. If you look at that situation, you've got the filing of a petition that alleges exploitation, followed by an objection from the alleged disabled adult, I think that it's incumbent on the court, especially when there's allegations of exploitation, to at least give the petitioner the chance to articulate why. Why are you opening the door here to, let's not deal with this family, but with families that we do read about where there's an alleged favored son or an alleged parent, and there's the black sheep of the family who are jealous of that relationship, that they can proceed with impunity to file this type of action? I'm not opening the door to that. What I'm suggesting is the statute. Because if we say the statute says once an objection is made, motion for dismiss, it's all over. I understand that concern. It's a legitimate concern. But as with so many other areas in the law, this statute needs to strike a balance between the disgruntled child complaining about what the favored child is doing and the true exploitation where the exploiter is able to prevail upon the elderly, weakened adult, father, mother, and get them to object to the proceedings. And there's one point that I really want to draw the court's attention to. I don't want to, if you have a question, I'm going to answer it. But it's really important. The testimony about why Jim filed the exploitation count, why he believed there was exploitation, there's a lot of it. But one key point, if you don't read or focus on anything else, Jim's brother Andy told him a story. This happened in 2009. Andy tells him a story. He was summoned by Margaret to Jack's house. Jack's there. Margaret's there. The mother's there. So it was before the mother died. And Andy was handed a check by Margaret to purchase Andy's stock in the company, A. Lucas. And Margaret handed him the check. It was on Jack's account. And when Andy went in to visit with his father, his father didn't recognize him. Think about that. Your sister hands you a check that's drawn on your father's account. There's no testimony. He saw her write the check. But she handed him a check drawn on the father's account to buy the son's stock in the company. And on the very day it happened, the father didn't even recognize the son. So that, to me, is at least a good faith basis to say, I think there's some exploitation going on here. And I think it's a reasonable inquiry. Correct. And again, the court's ruling wasn't that there wasn't an inquiry made. It was that he didn't obtain consent. He should have asked. And that's not a basis for sanctions. Thank you. All right. Thank you, Mr. Waldman. Mr. Rossler, thank you. The matter will be taken under advisement. A written disposition will be issued. We'll take a brief recess for a panel change.